NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ALVIN CORDERO, | **Hon. Dennis M. Cavanaugh** |
| Plaintiff, | **Opinion** |
| v. | Civil Action No. 10-cv-05598 (DMC)(JAD) |
| AFI FOOD SERVICE, LLC, a Corporation, | |
| Defendants. | |

DENNIS M. CAVANAUGH, U.S.D.J.

This matter comes before the Court upon the Motion of Defendant AFI Food Service, LLC ("Defendant") for Summary Judgment. (ECF No.33). Pursuant to FED. R. CIV. P. 78, no oral argument was heard. After carefully considering the submissions of the parties, and based upon the following, it is the finding of this Court that Defendant's Motion is **granted**.

I.    BACKGROUND

This matter involves a dispute over the termination of an employee. Plaintiff is Alvin Cordero ("Plaintiff"), a former employee of Defendant. Defendant terminated Plaintiff's employment on July 23, 2010. (Certification of Keith Harris, Ex. F, 138:16-18; 142:7-9). Defendant contends that Plaintiff made critical errors as an employee that cost his employer, Defendant, thousands of dollars. (Defendant's Brief ("Def. Br.") 1). Plaintiff, however, argues that the termination was in retaliation for taking intermittent leave pursuant to the Family

1

Medical Leave Act, 29 U.S.C. 2601 ("FMLA"). (ECF. No. 33, Ex. A, Compl. ¶ 9).

Plaintiff was employed by Defendant as a full-time receiver on the day shift at a warehouse located on IKEA Drive, Elizabeth, New Jersey from October 20, 2008 until his termination on July 23, 2010. (Certification of Keith Harris, Ex. A, Compl. ¶ 1). As a receiver, Plaintiff was responsible for properly counting and tagging inbound products. (Id., Ex. D, 74:9-12). In his deposition, Plaintiff acknowledged making workplace mistakes including improperly tagging inbound products on multiple occasions and signing a bill of lading "subject to count"[1] without authorization from his supervisor, Chris Ducey. (Id., Ex. D, 74:117-22, 74:20-22). Plaintiff further acknowledged in his deposition, that receivers could be fired for only one write-up, and receivers were replaced every week. (Id., Ex. D, 166:16-167:3).

With regard to Plaintiff's request for FMLA leave, Plaintiff first requested FMLA leave in September 2009. (Id., Ex. F, 50:18-51:15). At this time he informed the Vice President of Human Resources, Kathleen Stevens, that his wife was suffering from cancer. Ms. Stevens explained to Plaintiff that he would not be eligible for FMLA leave until he worked a full year and 1,250 hours. Stevens further explained to Plaintiff what his rights were under the FMLA statute and when his eligibility would begin. (Id., Ex. F, 54:11-25). Plaintiff began filling out the necessary paperwork to obtain FMLA leave in November of 2009, but did not complete the paperwork until May 27, 2010. (Id., Ex. F, 137:16-20).

During the period between when Plaintiff initially inquired about his eligibility for FMLA leave and Plaintiff's completion of the necessary paperwork, Plaintiff never specifically asked for

---

[1] Accepting deliveries subject to count refers to taking delivery of product and allowing the delivery driver to leave without verifying product and quantity.

2

FMLA leave to tend to his wife. Rather he would request intermittent time off as necessary, to take his wife to and from appointments. (Id., Ex. D, 234:2-9). Nor was Plaintiff ever prevented from taking time off to care for his wife (Id., Ex. F, 143:15-18). Kathleen Stevens stated that Plaintiff was compensated for all time that he took off to care for his wife. (Id., Ex. F, 143:21-24). When Plaintiff was terminated on July 23, 2010, he was told that it was as a result of errors committed on the job and that he was costing the company too much money. (Id., Ex. D, 258:3-17).

Defendant filed this Motion for Summary Judgment and the accompanying Brief ("Def. Br.") on April 2, 2012. (ECF No. 33). Plaintiff filed its Brief in Opposition ("Pl. Opp'n Br.")[2] on May 7, 2012. (ECF No. 36). Defendant filed its Reply Brief ("Def. Rep. Br.") on May 29, 2012. (ECF No. 40). The matter is now before this Court.

## II.   STANDARD OF REVIEW

Summary judgment is granted only if all probative materials of record, viewed with all inferences in favor of the (non-moving party), demonstrate that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. See FED. R. CIV. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986). The moving party bears the burden of showing that there is no genuine issue of fact. Id. "The burden has two distinct components: an initial burden of production, which shifts to the (nonmoving party) if satisfied by the moving party; and an ultimate burden of persuasion, which always remains on the moving party." Id.

---

[2] The Court points out that Plaintiff's Opposition Brief is in violation of L. CIV. R. 7.2 which limits briefs to 40 pages. The Opposition Brief is 67 pages in length, and confusingly includes three different sets of pages numbered 1-6, making it tedious to follow the Table of Authorities.

The non-moving party "may not rest upon the mere allegations or denials of his pleading" to satisfy this burden, but must produce sufficient evidence to support a jury verdict in his favor. See FED. R. CIV. P. 56(e); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). "[U]nsupported allegations in [a] memorandum and pleadings are insufficient to repel summary judgment." Schoch v. First Fid. Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990). "In determining whether there are any issues of material fact, the Court must resolve all doubts as to the existence of a material fact against the moving party and draw all reasonable inferences - including issues of credibility - in favor of the (nonmoving party)." Newsome v. Admin. Office of the Courts of the State of N.J., 103 F. Supp.2d 807, 815 (D.N.J. 2000), aff'd, 51 Fed. App'x 76 (3d Cir. 2002) (citing Watts v. Univ. of Del., 622 F.2d 47, 50 (D.N.J. 1980)).

### III. DISCUSSION

#### A. Retaliation Claim

Plaintiff's retaliation claim under FMLA fails for lack of merit. In order to establish a prima facie case of retaliation under the FMLA, a plaintiff must satisfy the following three prongs: (1) Plaintiff took an FMLA leave; (2) he suffered an adverse employment decision; and (3) the adverse decision was causally related to his leave. Capilli v. Whitesell Const. Co., 271 Fed. Appx. 261, 265 (3d Cir. 2008),(quoting Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 146 (3d Cir. 2004)). Once plaintiff establishes a prima facie case, then "the burden shifts to [the defendant] 'to articulate some legitimate, nondiscriminatory reason for [his termination].'" Id. The plaintiff must then be afforded the opportunity to prove "by a preponderance of the evidence that the legitimate reasons offered by [the defendant] were not its true reasons, but were a pretext for discrimination." Id., (quoting Marzano v. Computer Science Corp. Inc., 91 F.3d 497,

4

503 (3d Cir. 1996)).

To establish pretext, the plaintiff must do more than simply show that the employer's reason was false; he must also demonstrate that defendant was motivated by discriminatory intent. Domurat v. Ciba Specialty Chemical Corp., 801 A.2d 423 (N.J. Super. Ct. App. Div. 2002). The plaintiff must establish not merely that his employer's proffered reason was wrong, but that it was so plainly wrong that it cannot be the employer's real reason. Keller v. Orix Credit Alliance, Inc., 130 F.3d 1101, 1109 (3d. Cir. 1997). Specifically, the plaintiff must demonstrate that (1) a discriminatory reason more likely motivated the employer that the employer's proffered legitimate reason, or (2) the defendant's proffered explanation is unworthy of credence. Id. at 76.

Here, Plaintiff fails to demonstrate a causal relationship between time that he took off from work to take his wife to and from medical appointments and his dismissal from Defendant. Plaintiff argues that he was denied the intermittent leave to which he was entitled, pursuant to 29 U.S.C. § 2612(b), which allows an employee to take leave for the serious health condition of a spouse. Intermittent leave can be taken in separate blocks of time or on a leave schedule that "reduces an employee's usual number of working hours per workweek, or hours per workday." 29 C.F.R. § 825.202. (Pl. Opp'n Br. 2-3). On the contrary, it seems that Plaintiff was granted intermittent leave to care for his wife, and Plaintiff was paid for all the time that he took off from work. (Id., Ex. F, 143:15-18, 21-24). Plaintiff first inquired about FMLA leave in September 2009. (Id., Ex. F, 50:18-51:15). Kathleen Stevens, Defendant's Vice President of Human Resources, stated in her deposition that she explained to Plaintiff that he was not eligible to begin taking FMLA leave until October of 2009. (Id., Ex. F., 54:11-25). Plaintiff received the necessary paperwork to fill out, but did not return the completed FMLA application paperwork to the

Human Resources department until May 27, 2010. (Id., Ex. D, 123:16-20). In the time period between Plaintiff's first inquiry about FMLA leave and his completion of the application paperwork, Plaintiff was granted intermittent time off. (Id., Ex. F, 53:16-24).).

Further, Defendant has established a legitimate reason for terminating Plaintiff's employment. Defendant has pointed out a number of mistakes that Plaintiff committed while employed by Defendant that ultimately led to his dismissal. Plaintiff, in his deposition, has conceded to having made workplace errors. Specifically, Plaintiff admits to having improperly tagged inbound products on multiple occasions. (Id., Ex. D, 74:17-22). Further, Plaintiff concedes that there was never a twelve month period of time while he was employed by Defendant where no disciplinary action had been taken against him. (Id., Ex. D, 119:22-25). Defendant states that the event that ultimately led to Plaintiff's dismissal was an error committed on July 19, 2010. (Certification of Paula Dillon, Ex. S, 240:12-18). That error cost the Defendant approximately $2,000.00 (Id., Ex. S, 251:19-253:19). Therefore, Defendant has established a legitimate, non-discriminatory reason for terminating Plaintiff as an employee.

Plaintiff contends that Defendant's stated reasons for terminating Plaintiff are merely pre-text. The Court finds this argument unpersuasive. In his Opposition Brief, Plaintiff argues that his performance errors at work mainly occurred in the period of March and April 2010, and were directly related to the stress Plaintiff was facing as a result of being denied FMLA leave by Defendant and being forced to work and take his wife to necessary medical treatments. (Pl. Opp'n Br. 14). It is difficult to rectify this argument from Plaintiffs own statements that he never specifically asked for FMLA leave, and that his mistakes made at work were not made because he wasn't given time off, but because he was not mentally focused. (Certification of Keith Harris,

Ex. D, 235:25-236:6; 236:17-22). Further, Plaintiff had numerous performance related write-ups before March of 2010. Plaintiff has acknowledged that he was aware that he could be terminated by Defendant for even one write up. (Certification of Keith Harris, Ex. D,166:24-25, 167:2-3). The purpose of the FMLA is not to excuse workplace errors that were made due to a spouse's illness.

In light of these facts, Plaintiff has not established that Defendant's proffered reason was not only wrong, but that it was so plainly wrong that it cannot be the Defendant's real reason for the firing, as required by Keller. Accordingly, Plaintiff's claims for retaliation under the FMLA are without merit.

### B. Interference Claim

Plaintiff, in his Opposition Brief, makes the argument for a claim of interference under the FMLA. (Pl. Opp'n Br. 5) This is the first time Plaintiff has advanced that argument. The "purpose of pleadings is to give notice of the claim that is being made." Rannels v. S. E. Nichols, Inc., 591 F.2d 242, 247 (3d Cir. 1979). The one-count Complaint filed by Plaintiff does not allege interference, nor is the word "interference" ever used. (See, Pl. Opp'n Br., Ex. A). Accordingly, the Court will not allow this claim to be advanced by Plaintiff.

### IV. CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment is **granted**. An appropriate Order accompanies this Opinion.

S/ DennisM. Cavanaugh
Dennis M. Cavanaugh, U.S.D.J.

Nov. 29, 2012

Orig.: Clerk
cc: All Counsel of Record
Hon. Joseph Dickson, U.S.M.J.
File